IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER SEVEN |
| GEORGE W. COLE, | : | BANKRUPTCY NO.: 5-00-bk-04467 |
| DEBTOR | : | |
| ROBERT P. SHEILS, ESQ., TRUSTEE IN BANKRUPTCY, | : | {**Nature of Proceeding**: Objection to Proof of Claim #7} |
| OBJECTOR | : | |
| vs. | : | |
| CITY OF WILKES-BARRE, | : | |
| CLAIMANT | : | |

# OPINION

Procedurally, the instant matter is before the Court on an Objection by the Trustee to the Proof of Claim of the City of Wilkes-Barre ("City"). The facts underlying the instant objection are well-known to the parties and will be briefly set forth herein. Prior to the filing of the bankruptcy and in the course of his employment, the Debtor, as a police officer for the City, was injured in an automobile accident. The City, which was obligated to make payments to the Debtor under the provisions of the Pennsylvania Heart and Lung Act, 53 Pa.C.S.A. § 637 et seq., made payments to the Debtor for his lost wages and medical bills. In 1996, the Debtor initiated a personal injury lawsuit against Luzerne

County, Pennsylvania, and Theodore Yavorchak, to recover compensation for all damages sustained by the Debtor as a result of the accident.  Thereafter, in December of 2000, the Debtor filed a Voluntary Petition under Chapter 7.  Approximately five years later in January of 2005, the Chapter 7 Trustee filed an Amended Motion to Approve Settlement of Debtor's Personal Injury Action in the amount of $569,376.31.

On October 1, 2004, the City filed a timely Proof of Claim which became the subject of the instant objection.  While subsection number 4 of the Proof of Claim indicates the total amount of the claim at the time the case was filed was $386,550.47, an attachment explaining that calculation reflects the claim was for both a pre-petition and post-petition period, although the Proof of Claim did not break down into exact numbers the pre-petition and post-petition portion of the claim.  The claim is for payments made to Debtor by the City from April 12, 1996 through September 25, 2004.  The attachment also indicates that the City is making payments to the Debtor on a biweekly basis in the amount of $1,753.09 and that the Proof of Claim should include all payments made from September 24, 2004 forward.  The Proof of Claim indicates the basis of the claim was for "Heart and Lung" subrogation and the claim was a secured claim on the proceeds from any award in the personal injury litigation referenced above.

The Trustee's position is that while he has agreed the City is entitled to subrogate any pre-petition payments made on behalf of the Debtor, in claims litigation, the court

must determine the amount of the claim "as of the date of the filing of the petition." See 11 U.S.C. § 502(b). As such, the Trustee's argument continues that any payments made by the City on the Debtor's behalf, post-petition, are non-dischargeable debts which the City can pursue reimbursement from the Debtor personally after the entry of the discharge. The City argues the flip-side of the coin stressing that because the underlying obligation to make any payments began pre-petition, then by logic all post-petition payments made pursuant to that obligation should be considered as pre-petition debt of the Debtor. In short, "the City believes that because the Debtor's injury occurred pre-petition, the City's post-petition payments must be pre-petition debts since they relate back to the date of the Debtor's injury." See Brief in Support of City of Wilkes-Barre's Request to Treat all Post-Petition Payments of Heart and Lung Act Benefits to Debtor as Pre-Petition Debts at 5 (Doc. #47).

The City stresses it was unable to find any authority in support of either its position or the Trustee's position. The Court agrees with that statement aside from the fact that the plain language of § 502(b) indicates the Court shall determine the amount of a claim as of the date of the filing of the petition and shall allow such claim in that amount. Both parties agree that the Pennsylvania Heart and Lung Act at 53 Pa.C.S.A. § 637 et seq. provides the City with subrogation rights in the instant matter at least for those payments made through the date of the filing of the petition. I, too, agree. See 53

[m:\users\cathy\wp8docs\opinions\Cole_5-00-bk-04467.wpd]   3

Pa.C.S.A. § 637 et seq. and *Brown v. Rosenberger*, 723 A.2d 745 (Pa.Cmwlth. 1999). The Court also agrees with the Trustee's position that it must determine the amount of the Proof of Claim as of the date of the filing of the bankruptcy petition, i.e., December 18, 2000. The Trustee represented he will recognize that amount as a pre-petition, priority debt. Calculation of this amount is purely mechanical at this point and the parties, while they did not present to the Court the amount of pre-petition payments made by the City to the Debtor under its responsibilities pursuant to the Pennsylvania law, the parties are invited to do so.

Unfortunately, the inquiry cannot be simplified by just recognizing the amount of the Proof of Claim as of the date of the filing. Procedurally, the City should have initiated an adversary proceeding to establish a constructive trust on the monies received by the Trustee by way of the settlement of the personal injury action and to determine the parties' respective rights in the settlement proceeds for that portion of the post-petition payments made by the City to the Debtor. See discussion, *infra*. Perhaps, the Court is being hyper-technical on procedure. The fact is the instant procedural posture of the case, by way of an objection to a proof of claim, addressed both the pre-petition and post-petition characteristics of the payments made by the City to the Debtor. The Trustee recognized the enforceability of the subrogation allowed to the City under the terms of the Pennsylvania law. The Trustee also recognized and agreed that, to the extent payments

were pre-petition, those payments would be subrogated in favor of the City. If subrogation is enforceable, as the Trustee agrees, outside of bankruptcy and for pre-petition payment, then the same subrogation permitted by the Pennsylvania law should be enforced against debtors and bankruptcy trustees for the post-petition payments. While the Trustee is right that the proper resolution of an objection to a proof of claim is to determine the amount of that claim as of the date of the filing, the Trustee has done nothing affirmatively nor has he cited any authority which would defeat the subrogation rights of the City because of the filing of the bankruptcy. Furthermore, neither party brought up the subject of whether the settlement proceeds were subject to being held by the Trustee in constructive trusts for the City.

Several courts have addressed subrogation and constructive trusts and the Court finds their reasoning applicable to the instant matter. In *In re Squyres*, 172 B.R. 592 (Bankr. C.D.Ill. 1994), the court addressed an insurer's rights to subrogation to the proceeds of a personal injury action settled by the debtor/insured. Here, the court wrote that a debtor's interests in an asset or his rights against others are not expanded by the filing of a bankruptcy proceeding. Citing *Matter of Sanders*, 969 F.2d 591 (7th Cir. 1992). Further, the court wrote that "[t]o the extent that the legal or equitable interest of the debtor in property is limited in the debtor's hands, it is equally limited as property of the estate." *In re Squyres*, 172 B.R. at 594 *citing In re Balay*, 113 B.R. 429 (Bkrtcy. N.D.Ill.

1990). The *Squyres* court, finding that the settlement proceeds were actually held in trust for the insurer, cited the cases of *In re U.S. Lines, Inc.*, 79 B.R. 542 (Bkrtcy. S.D.N.Y. 1987) and *Matter of Yakel*, 97 B.R. 580 (D.Ariz. 1989) to support the imposition of a constructive trust. In *Yakel*, the Arizona Health Care Cost Containment System actually was required by Arizona state law to seek reimbursement for any costs for hospitalization and medical care provided by the system that were recovered from other available third party payors. Subrogation was one of the methods which permitted the Arizona Health Care Cost Containment System to seek recovery. The *Yakel* court addressed Congress' intent to exempt from the bankruptcy estate property in which the debtor does not hold an equitable interest.

> Section 541 will not apply in those instances where property which ostensibly belongs to the debtor is in reality, held by the debtor in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance and the insurance company had sent payment of those bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed. The payment would not, therefore, become property of the estate pursuant to Section 541.
> H.R.Rep. No. 595, 95th Cong., 1st Sess., 367-8 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 82-3 (1978) reprinted in 1978 U.S.Code Cong. & Admin.News 5787.

*Matter of Yakel*, 97 B.R. at 581-582.

The reasoning in the above cases is persuasive and I find that the entire amount of the payments made by the City to the Debtor pursuant to the City's obligations under the Pennsylvania Heart and Lung Act to be subject to subrogation. I further find that the

Trustee holds the settlement proceeds in constructive trust in the amount equal to the payments made by the City on behalf of the Debtor under the requirements of the Pennsylvania Heart and Lung Act. Consistent with the above reasoning, I will grant in part and deny in part, the Trustee's Objection to the Proof of Claim of the City of Wilkes-Barre. To the extent that the Proof of Claim requests a determination of the amount of the claim for the period after the filing of the bankruptcy petition, that portion of the claim is denied. The portion of the claim for amounts paid over to the Debtor prior to the petition is granted.

    An Order will follow.

Date:   October 13, 2005

John J. Thomas, Bankruptcy Judge
(CMS)

*This electronic opinion is signed and filed on the same date.*